### J. D. Jinks v. The State.

1. ARREST OF JUDGMENT. — The objection that the indictment was not properly presented in open court by a quorum of the grand jury comes too late when made for the first time by motion in arrest of judgment. Had this objection, if tenable, been made at the proper time, before a waiver by plea of " not guilty," the indictment should have been quashed.

2. THEFT — INDICTMENT. — It is a well-settled principle of law that when one person has the general and another a special property in the thing stolen, an indictment for theft of it may allege the property in either.

3. SAME — SPECIAL OWNERSHIP. — A person who, in conformity with the estray laws, has taken up and holds an estray, has a special property in the animal, and an indictment for theft of it may allege him to be the owner.

4. EVIDENCE. — It is well settled that the facts and circumstances attending the theft may be given in evidence, and that proof of the special ownership in the one holding the special property will sustain the averment that he is the owner.

APPEAL from the District Court of Hunt. Tried below before the Hon. G. J. CLARK.

The indictment charges the appellant with the theft of a calf, the property of one Thomas Rattan, from his possession.

The testimony discloses that during the month of December, 1873, Rattan took up and estrayed a certain heifer. It is further disclosed that after the heifer was estrayed she gave birth to the calf alleged to have been stolen by appellant from the possession of Rattan, the taker-up. It further appears that, at the sale under the estray law, the heifer was purchased by Rattan, the prosecuting witness.

*Jones & Lewis*, for the appellant, file an able brief, insisting that the indictment is defective, in that it charged the ownership of the calf in Tom Rattan, whereas it should have charged the possession in Rattan, as holding it for the owner, who was unknown. Counsel quote so much of the testimony of Rattan as shows him to have estrayed the mother of the calf before it was born, and wherein he claims to have had the calf in " his possession and under his control " by virtue of the estrayal. The counsel dispute the assumption of the State that Rattan, by virtue of his estrayal of the mother, became invested with such a qualified or special property in the calf as to warrant the allegation of ownership in him, and insist that, before he could become invested with the title, and, consequently, the possession of the animal alleged to have been stolen, he must be shown to have complied with the estray laws of this State. See 2 Pasc. Dig. 1394. The first section of this act provides that when any animal, coming within the definition of an estray, shall be found on the plantation or land of any citizen of this State, said citizen may proceed forthwith to advertise the same, etc., — thus providing that such animal must be shown to have been taken up on the plantation or land of the citizen seeking to estray it. And the second section of this act provides that oath must be made to the facts alleged as entitling the citizen to estray the animal. Counsel urge that unless this oath is made, as required by the second section of the act referred to, Rattan in this case was not entitled to the ownership and possession, and that the averment of ownership in him is fatal to the indictment.

*George McCormick*, Assistant Attorney-General, for the State, insists that it is not necessary that the possession and ownership be in the same person, and that possession is constituted by the exercise of actual control, care, or man-

agement of the property, whether the same be lawful or not (Pasc. Dig., arts. 2386, 2387); that Rattan had such a special property in the animal stolen as will support the allegation of ownership in the indictment. *Moseley* v. *The State*, 42 Texas, 78; *Cox* v. *The State*, 43 Texas, 101; Bishop's Cr. Law, sec. 789; 2 Whart. Cr. Law, sec. 1830; 2 Bishop's Cr. Proc., sec. 720, and notes; *Pitts* v. *The State*, 3 Texas Ct. App. 210.

Further, that it would be no defence to this action against appellant if Rattan had himself, in the first instance, stolen the animal from the true owner. Pasc. Dig., art. 2387, and authorities quoted in 2 Bishop's Cr. Proc. 721, note 2.

WINKLER, J. The several grounds upon which the appellant relies for a reversal of the judgment, though presented in various forms, and at different stages of the proceedings below, resolve themselves into three material questions necessary to be considered.

1. Does the record show a proper presentation of the indictment by the grand jury?

2. Was the evidence admissible under the averments in the indictment, and in immediate connection with them?

3. Was the charge to the jury a correct enunciation of the principles of law applicable to the case as made by the pleadings and the evidence, or a charge upon the weight of evidence?

As to the first question, little need be said further than this: The question is raised for the first time in a motion in arrest of judgment. A similar question arose and was carefully considered by this court in a most grave and serious matter, involving life itself, — *Houillion* v. *The State*, — and, upon a review of other cases, it was held that the objection that the record did not show a proper presentation of the indictment by the grand jury came too late when presented, as in the present case, for the first time by

motion in arrest of judgment.  3 Texas Ct. App. 537.
Questions of this character must be made at the proper
time, and in the manner prescribed by the Code of Pro-
cedure, arts. 483, 485, 498 (Pasc. Dig., arts. 2950, 2951,
2967).  The ground of objection, if tenable, should have
been promptly met, as was done in *Hardy* v. *The State*,
1 Texas Ct. App. 556, and in *Denton* v. *The State*, 3 Texas
Ct. App. 635.

The second and third more important questions are to the
admissibility of the evidence under the averments of the
indictment, involving the effect of the testimony and the
sufficiency of the charge of the court.  The indictment
charges that the defendant "did unlawfully and fraudu-
lently steal, take, and carry away from and out of the
possession of one Tom Rattan, without his consent, one
calf, of the value of five dollars, the said calf being of the
cattle kind, and corporeal personal property of the said
Tom Rattan," with intent, etc.

The prosecuting witness, Tom Rattan, testified, among
other things, that the calf was taken without his knowledge
or consent, and says: "The calf was under my control
and in my possession this way: The fall before, I believe in
the month of December, 1873, I had estrayed the mother
of the calf I lost.  *  *  *  I had possession of the calf
and her mother as estrays."  The record was produced to
show that Rattan had estrayed the mother, and there was
proof that the calf alleged to have been stolen was the calf
of the cow estrayed by Rattan.  A bill of exceptions was
taken to the admission of Rattan's testimony and to the
record of the estray proceedings.

The court instructed the jury, among other things, that
"when one person is the rightful owner of property, and
another has the possession and control thereof, the person
thus in possession is the owner of the property as against
all wrong-doers.  And the jury are charged that the rec-

ords read to them as evidence in this case are sufficient evidence that Thomas Rattan was the owner of the cattle therein mentioned as estrays and posted by him, as against everybody except the rightful owner of the same, and this would be the case even if there were some irregularities in the mode of estraying the cattle; and a person stealing them from him would be a taking from the possession of the owner, in contemplation of law defining theft.''

The effect of this instruction was to inform the jury, first, that if Rattan held the animal as an estray, his possession and control in that manner would support an indictment charging that he was the owner; and, secondly, that the record introduced was proper evidence of the fact that Rattan had estrayed the property mentioned in the record, notwithstanding some of the proceedings might appear irregular. The charge above set out was followed immediately by a further charge, to this effect: ''And if the jury believe from the evidence that the calf charged to have been stolen was the offspring of a cow which Thomas Rattan had estrayed,'' etc., then he would be guilty. With this addition, there was nothing in the charge, when taken altogether, and especially in view of other portions most favorable to the defendant, calculated to mislead; nor was it a charge upon the weight of the evidence. The charge was a correct enunciation of the law of the case, as made by the pleadings and the evidence. And the evidence was admissible, and sufficient to sustain the averment of ownership as alleged in the indictment. The appellant's counsel insist that the indictment should have charged that Rattan was holding the property for the owner.

Theft, agreeably to the provisions of the Penal Code, is defined to be the fraudulent taking of corporeal personal property belonging to another, either from the possession of the owner, or from the possession of some person holding the same for the owner, under the other circumstances

mentioned in the Code. Art. 745 (Pasc. Dig. 2381). From the time Rattan estrayed the property up to the date of sale under the stray laws he was holding the property for the owner, and subject to reclamation by him on proper proof; and from the date of sale, he, being the purchaser, became the owner of the property himself. In either event his possession was legal, and the law protected his possession against all persons except the rightful owner to the time of the stray sale ; and, having such legal possession, it was proper to allege in the indictment that he was the owner of the property.

In the case of *Moseley* v. *The State*, 42 Texas, 78, it was held that, in an indictment for theft, the stolen property may be alleged in the indictment to belong to one who had but a special property in it at the time it was stolen; and in *Cox* v. *The State*, 43 Texas, 101, in some respects quite similar to the present case, Reeves, A. J., delivering the opinion of the court, says : " The court instructed the jury, in substance, that Marchant, the alleged owner, acquired such special property in the gelding, on complying with the estray law, as would be sufficient to support the allegation of ownership as charged in the indictment. The rule is well settled, where one person has the general and another the special property in the thing stolen, the indictment may allege the property in either."

In *Maddox* v. *The State*, where the indictment was for theft of a buggy and two mules, and the proof showed that the defendant had obtained the property by hiring, an objection kindred to the objection here was taken to the evidence, the point of objection being that the indictment did not aver that the taking, though originally lawful, was obtained by some false pretext, or with intent to deprive the owner of his property ; and the court say : " The taking, as defined in article 2385, does not describe a different offence from that defined by article 2381, but only differs in its facts and circumstances, which are matters of proof, and

need not be averred in the indictment." 41 Texas, 205. And see, to same effect, *Berg* v. *The State*, 2 Texas Ct. App. 148; *Culberson* v. *The State*, 2 Texas Ct. App. 324; 3 Greenl. on Ev., sec. 161. It would be competent even to charge that the property belonged to some person to the grand jurors unknown. See Culberson's case, above; 2 Bishop's Cr. Law, sec. 800.

The law seems well settled, first, that in an indictment for theft, the ownership of the property alleged to have been stolen may be averred to be in either the one having the general or in him who has a special property in the thing stolen; and, second, that the facts and circumstances attending the theft may be given in evidence, and that proof of ownership in the person holding a special property in it would sustain an averment that he was the owner. Finding no material error in the proceedings, the judgment is affirmed.

*Affirmed.*